UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**TIMOTHY A. GEHRIG**,                                    Civil Case No. 3:10-1433-KI

                Plaintiff,                    OPINION AND ORDER

    v.

**COMMISSIONER OF SOCIAL
SECURITY**,

               Defendant.

David B. Lowry
9900 SW Greenburg Rd.
Columbia Business Center, Suite 130
Portland, OR 97223

         Attorney for Plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Ave., Suite 600

Page 1 - OPINION AND ORDER

Portland, OR 97201-2902

Gerald J. Hill
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

KING, Judge:

        Plaintiff Timothy Gehrig brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

        Gehrig filed an application for SSI on July 5, 2006. The application was denied initially and upon reconsideration. After a timely request for a hearing, Gehrig, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on July 21, 2009.

        On September 29, 2009, the ALJ issued a decision finding that Gehrig was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on October 22, 2010.

## DISABILITY ANALYSIS

        The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income

benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner

Page 3 - OPINION AND ORDER

acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

**THE ALJ'S DECISION**

The ALJ found Gehrig suffered from degenerative disc disease of the thoracic and cervical spine, but that this impairment was not severe enough to meet or medically equal the requirements of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  The ALJ found Gehrig had the residual functional capacity ("RFC") to perform sedentary work with the following exceptions: work involving even moderate exposure to vibration and, due to pain and use of medical marijuana, work involving more than lower SVP 3 semi-skilled tasks.  Relying on the testimony of a vocational expert ("VE"), the ALJ found Gehrig could perform work as an assembler, semi-conductor; and information clerk.

**FACTS**

Gehrig was 43-years old at the time he filed his application for disability; he has a GED and two years of college education.  He has worked as a carpenter helper/maintenance worker, numerical control machine set up operator and, most recently, as a caregiver/nurse assistant.

Gehrig reported injuring his neck in the late 1980s when he fell 15 feet onto rocks.  He alleges disability due to that neck injury beginning June 1, 2005.  He re-injured his neck multiple times over the years, but the last time was in May 2006.  At that time, imaging showed moderate degenerative changes at T4-5 and mild changes at T5-6-7, with accentuated upper thoracic kyphosis, and mild levocervicothoracic curvature.  He was diagnosed with cervical sprain.  The emergency room doctor diagnosed cervical radiculopathy and cervical strain and recommended rest, the use of a cervical collar, and lifting no more than five pounds.

Gehrig complained of left ankle pain from an accident that also took place in the 1980s; at that time, pins were placed in his ankle.  He could not remember the accident.  He has had trouble

walking over the years due to the left ankle pain.  He also has limited range of motion in his left arm from a childhood injury.

**DISCUSSION**

I.    <u>Other Severe Impairments</u>

Gehrig argues that the ALJ erred by failing to consider as severe impairments the pain he experiences in his ankle, arms, hips and legs.

Although the threshold at step two is a low one, Gehrig must point to a medically determinable impairment in order to trigger the ALJ's duty to evaluate the severity of the impairment.  A medically determinable impairment must be established through signs, symptoms, and medically acceptable clinical or laboratory findings but under no circumstances can be established through symptoms, namely the individual's own perception of the impact of the impairment, alone.  <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1005 (9th Cir. 2005).  Pain is not an impairment.  20 C.F.R. §416.929(a).  Gehrig does not point to a medically determinable impairment that the ALJ should have considered.  Further, the ALJ considered Gehrig's pain and its effect on his ability to concentrate, finding him capable of performing jobs of lower SVP 3 semi-skilled work.  Finally, Gehrig fails to explain how any ankle condition, arm condition or hip condition would be inconsistent with an RFC for sedentary work.  The ALJ did not err.

II.    <u>Credibility Assessment</u>

Gehrig contends the ALJ failed to properly evaluate his testimony about his pain and its effect on his ability to work.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical

evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination, and the ALJ must rely on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Gehrig recites this test, but then argues that the ALJ was required to consider the credibility factors set out in Social Security Ruling 96-7.  That ruling states:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kind of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
>   1. The individual's daily activities;
>
>   2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
>   3. Factors that precipitate and aggravate the symptoms;
>
>   4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

   5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

   6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Gehrig does not explain how the ALJ violated SSR 96-7. The ALJ considered Gehrig's daily activities (he laid in bed, performed light household chores, played his guitar), described his pain (neck "locks up" for weeks at a time, unable to lift), what makes the pain worse (lifting), medication (narcotics and medical marijuana, which the ALJ accounted for in Gehrig's RFC), and the measures Gehrig used to relieve the pain (lying down). In addition to these credibility factors, the ALJ considered Gehrig's varying reasons for ceasing work (being laid off versus ceasing work due to pain) and varying dates for the onset of his disability. The ALJ considered Gehrig's lack of treatment at the time of his alleged fractured spine, that the current imaging shows no history of a fracture, the fact that no medical recommendation was given for lifting limits other than those once given by the emergency room doctor, Gehrig's poor effort and symptom embellishment on testing, his minimal treatment other than narcotics, as well as the results of an MRI showing only "mild stenosis." Tr. 13.

The ALJ concluded that, based on all the reasons set forth above, Gehrig experienced some of the symptoms he described, but that the intensity, persistence and limiting effects were not as great as he depicted. The ALJ's reasons were specific, clear and convincing reasons for finding Gehrig's statements about his limitations less than credible. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (although the ALJ cannot reject subjective pain testimony solely because it was

not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (lack of cooperation during an evaluation and efforts to impede accurate testing of limitations are valid reasons to find that a claimant lacks credibility); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (a tendency to exaggerate symptoms is another valid reason to support a negative credibility finding); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (the fact that a claimant's symptoms are not severe enough to motivate him to seek other forms of treatment, even if some treatment is underway, "is powerful evidence regarding the extent" of the symptom); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (unexplained failure to seek treatment or to follow a prescribed course of treatment is a credibility factor); Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (evidence of conservative treatment, consisting of the use of over-the-counter pain medications, is sufficient to discount a claimant's testimony on the severity of an impairment).

Gehrig argues that the ALJ should have asked Gehrig about his lack of treatment and his poor effort on examination, and that he was required to do so under SSR 96-7p. That ruling, however, simply requires the ALJ to obtain information "that could shed light on the credibility of the individual's statements" when "additional information is needed to assess the credibility of the individual's statements about symptoms and their effects[.]" SSR 96-7p. The ALJ was not required to ask Gehrig about his lack of treatment or poor effort when both were well-documented in the medical records; there was no need for additional information. See Tr. 13 (conceded no treatment for his initial neck injury); Tr. 259 (consultative examiner Leslie King, M.D. noted "poor effort"); Tr. 319 (D. Dean Orton, D.D.O. noted "alot [sic] of symptom magnification"). I find no error in the ALJ's opinion.

III.    Gehrig's RFC

Gehrig argues that the ALJ failed to comply with SSR 96-8p, which required the ALJ to assess Gehrig's ability to perform work on a regular and continuing basis, eight hours a day and five days a week.  Gehrig also suggests the ALJ should have considered the effect his pain would have on his concentration, stamina and pace, and the effect of his limited neck movement, inability to sit for a long time, difficulty pushing and pulling objects, shakiness in his hands, and muscle spasms. Gehrig finally accuses the ALJ of neglecting to ask the VE a hypothetical that included Gehrig's need for a limitation to vibration exposure.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.  An ALJ is not required to incorporate limitations that are not supported by substantial evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

The ALJ properly formed the RFC here.  First, Gehrig identifies no medically determinable impairment that would result in difficulty pushing and pulling objects, shakiness in his hands, and muscle spasms.  See SSR 96-8p (ALJ required to "consider[] only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments").  The ALJ complied with the remainder of SSR 96-8p, which required her to discuss the medical evidence and Gehrig's complaints of pain, resolve inconsistencies in the record, and "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work."  SSR 96-8p.  The ALJ accounted for some of the effect of pain by limiting Gehrig

to "no more than SVP level [3] tasks due to the combined effects of pain and/or psychological symptomotology." Tr. 67. To the extent Gehrig quibbles with the ALJ's opinion that such a limitation would adequately cover his level of pain, the ALJ properly rejected Gehrig's complaints as set forth above. Finally, the ALJ concluded that "the generous limitations identified in the assessment of residual functional capacity in this decision more than amply accommodate the claimant's impairment-related symptoms and limitations." Tr. 14. In fact, the ALJ's RFC was more conservative than either of the consulting physicians' opinions, and the RFC was consistent with the consultative examiner's opinion. See Tr. 262 (Neal Berner, M.D.), 279 (Martin Kehrli, M.D.), Tr. 260 (Dr. King's opinion that Gehrig could perform sedentary work). Finally, Gehrig fails to explain how the RFC for sedentary work would have been incompatible with any of his alleged limitations.

As for the vibration, the ALJ specifically included in the hypothetical to the VE a need to "avoid even moderate exposure to vibration." Tr. 67. The VE responded by indicating that a claimant with such an RFC could perform jobs such as assembler, semiconductor; information clerk; and order clerk, food and beverage. Further, these positions involve no exposure to vibration. Def's. Br. 9 (citing U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991) (## 726.684-034, 237.367-022). The ALJ did not err.

///


///


**CONCLUSION**


Page 11 - OPINION AND ORDER

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.


IT IS SO ORDERED.

DATED this ____5th____ day of December, 2011.


                                         __/s/ Garr M. King_____
                                         Garr M. King
                                         United States District Judge